# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

SCOTT PETERS, #M52851,

        Plaintiffs,

    vs.                            Case No. 17-cv-0852-DRH

JOHN BALDWIN,
ILLINOIS DEPARTMENT OF
CORRECTIONS,
CHRIS BRADLEY,
JAQUELINE LASHBROOK,
FRANK LAWRENCE,
HOLLY HAWKINS,
GAIL WALLS,
CINDY MEYER,
R. ROWOLD,
ANGELA CRAIN, and
ERIN SMITH,

        Defendants.

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff Scott Peters, an inmate in Menard Correctional Center ("Menard"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. In his Second Amended Complaint, Plaintiff claims the defendants have failed to accommodate his disabilities and have been deliberately indifferent to his serious medical issues in violation of the Eighth Amendment. (Doc. 17). This case is now before the Court for a preliminary review of the Second Amended Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a

civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Second Amended Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

## The Second Amended Complaint

In his Second Amended Complaint (Docs. 17, 17-1), Plaintiff makes the following allegations: Plaintiff is an 80% disabled veteran of the United States Army who was severely injured on duty. (Doc. 17-1, p. 2). Plaintiff is "being

withheld his handicap assistive devices and accompanying medical treatment for these serious medical injuries." *Id.* "Defendants refuse to acknowledge [the] need and use of handicap assistive devices associated with the type of disability the Plaintiff has and requires for mobility." (Doc. 17-1, p. 4). Defendants also "refuse to allow ADA individuals who are confined to a wheelchair to participate in activities other normal individuals are allowed to participate in, such as summer night yard." *Id.* While other inmates are outside for three hours for summer night yard, ADA inmates are confined to "100 degree plus cells." (Doc. 17-1, p. 5). Further, "no current ADA individuals hold jobs that earn moneys." (Doc. 17-1, p. 4). Defendants also "refuse to allow ADA individuals who are confined to a wheelchair to attend recreation at the gym like any other normal person." *Id.*

There is an MP3 player that is available to inmates on which inmates can download music and send and receive text messages from friends, family, and attorneys. *Id.* If inmates are able to afford one, they can only download music and send and receive text messages in the gym and at commissary. *Id.* ADA individuals confined to wheelchairs are not allowed to attend gym and commissary. *Id.* There is also a computer in the Health Care Unit ("HCU"), but it is only for those who live there. *Id.* Plaintiff asked Defendant Meyer for a copy of the memorandum in which Menard ADA inmates are told that they can use the kiosk in the HCU, but Meyer referred Plaintiff to the grievance officer, who told Plaintiff that he "is not ADA and they do not operate the kiosks on where they me

positioned."[1]  *Id.*

Because Menard's cafeteria is not handicap accessible, defendants "refuse to allow ADA individuals to attend any kind of meals" there.  (Doc. 17-1, p. 5). ADA individuals instead have to eat meals in their cells, "while others are able to leave the cell twice a day for an hour out of cell time."  *Id.*  In the summer, this means ADA individuals are subjected to "90-100 degree cell[s] while others get fresh air twice a day for an hour."  *Id.*  In the winter, the food the ADA individuals are brought is cold.  *Id.*  Further, though once per month the menu has a pork option, the ADA individuals are not given a choice and instead receive bologna sandwiches.  *Id.*

"Defendants refuse to accommodate ADA individuals who are unable to use the phones on the yard during M.T.W. because [they] can't walk to the phone."  *Id.* Instead, defendants drop wheelchair-bound individuals off at a table and take the wheelchair, so wheelchair-bound individuals have to stay at the table for three hours.  *Id.*  If they need to use the restroom, they either go on themselves or "call to the tower and try to get them to get a C/O to get someone in the building to come get [them]." Most of the C/Os have "bad attitudes" about this because they have "to get a lieutenant and will cause conflict."  *Id.*

Defendants also refuse to put a wheelchair ramp at the personal property building for ADA individuals.  *Id.*  There are steep stairs instead.  *Id.*  ADA individuals are told that if they want their property or legal work they can "crawl

---

[1] The Court cannot discern what Plaintiff was attempting to say with this sentence, and with some others, so it and the other unclear sentences are included in quotes so as to avoid changing Plaintiff's intended meaning.

up the stairs or forget it." *Id.* There is also no wheelchair ramp at the barbershop, so to get a haircut or shave, ADA individuals have to be carried into the building by other inmates. *Id.*

Defendants have programs on the second floor of the school building, and though there is an elevator in the back of the commissary on the first level of the building, inmates are not allowed to use it. (Doc. 17-1, p. 6). ADA individuals therefore cannot attend programs that other inmates are able to attend. *Id.* The commissary is also not wheelchair accessible. *Id.* This particular building is equipped with a wooden wheelchair ramp, but it has no hand railings and nothing on either side to prevent a wheelchair from falling off. *Id.* Defendants also "refuse to allow ADA inmates that are confined to a wheelchair access to the Randolph Hall building for . . . activities and services that other normal individuals attend like Kairos." *Id.*

"Most if not all ADA individuals can use assistive walking devices such as crutches or canes, but this facility (Menard) refuses to allow it through their policies, procedures, and customs." *Id.* Instead, they confine these inmates to wheelchairs, resulting in them "crawl[ing] around on the floor of [their] cell[s]." *Id.* Further, Plaintiff's floor has a broken steam pipe, rendering the floor "somewhere about 200 degrees." *Id.* Plaintiff cannot stand without an assistive device, and inmates "fall all the time," but there are no assistive devices or railings for these inmates to hold. *Id.*

Some cell doors are also too wide for wheelchairs so inmates have to be

carried through them. (Doc. 17-1, p. 7). Wheelchairs also do not fit through the door to the room used for medical sick call, so wheelchair bound inmates remain in the hallway where other inmates and the corrections officer can hear the inmates' medical issues. *Id.* There are also no handicap medical examination rooms with adjustable tables at the facility. *Id.* Further, "[c]ertain doctors, in an effort to embarrass [inmates] or create emotional distress will go to the corrections officers cage, and because [wheelchair-bound inmates] can't stand up and [their] wheelchair does not fit into the examination room, [they] want to interrogate [inmates] about [their] medical issues in front of the guards and then ask [inmates] about the details of [their] case[s] in front of the sergeant and no less than three guards." (Doc. 17-1, p. 8).

Plaintiff "has written numerous grievances concerning the ADA violations of the IDOC and this facility (Menard) and sent letters to all of the defendants but to Chris Bradley who is superintendent and is privy to all situations involving movement at Menard." *Id.*

Angela Crain and Erin Smith convinced the doctor to sign an order giving Plaintiff three months of "lay-in-feed-in," reasoning that 24 hours per day with no movement might cause the pain from his injuries to subside. (Doc. 17-1, p. 11). "This will only make Mr. Peters' condition worse." *Id.* Plaintiff was recently designated ADA, and he was "segregated and put in even more pain and has sores from having to [lie] in bed 24 hours a day." *Id.* Plaintiff blames Crain, Hawkins, Walls, and Smith for this treatment. *Id.*

Plaintiff seeks declaratory and monetary relief, as well as "a preliminary and permanent injunction ordering all defendants in this case . . . to take action to make this facility and all Illinois Department of Corrections ADA accessible" or to transfer Plaintiff to a suitable facility with ADA upgrades that accommodate wheelchair-bound individuals. (Doc, 17-1, p. 13).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 5 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1 –** Defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111-213, and Rehabilitation Act, 29 U.S.C. §§ 794-94e, for failing to accommodate Plaintiff's disabilities.

**Count 2 –** Defendants exhibited deliberate indifference toward Plaintiff, in violation of the Eighth Amendment, by denying disabled inmates devices to assist them in walking and mobility.

**Count 3 –** Defendants were medically negligent by denying disabled inmates devices to assist them in walking and mobility.

**Count 4 –** Defendants showed deliberate indifference to Plaintiff's serious medical needs involving injuries he sustained while in the military by confining him to "lay-in-feed-in" for three months, in violation of the Eighth Amendment.

**Count 5 –** Defendants violated the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) ("HIPAA") by conducting medical visits with ADA inmates within earshot of other inmates and corrections officers.

As discussed in more detail below, Count 1 will proceed past threshold. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

## Count 1 – ADA and Rehabilitation Act

Title II of the ADA provides that "no qualified individual with a disability shall, because of that disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Rehabilitation Act also prohibits discrimination against qualified individuals based on a physical or mental disability. *See* 29 U.S.C. §§ 794-94e. Discrimination under both statutes includes the failure to accommodate a disability. *Wagoner v. Lemmon*, 778 F.3d 586 (7th Cir. 2015). In this case, the analysis under the ADA and Rehabilitation Act is the same, except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons. *Id.* at 592 (citing *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671-72 (7th Cir. 2012)) (citing 29 U.S.C. § 705(2)(B)).

Here, the allegations suggest that Plaintiff is a qualified individual with a disability, given that he relies, at least in part, on the use of a wheelchair. He has also alleged that he has been denied various benefits as a result of his disability, including certain meals, certain periods of recreation time, privacy during doctor's visits, and use of an MP3 device for listening to music and messaging

people outside of the prison. Plaintiff has recently asserted some of the same ADA and Rehabilitation Act claims regarding the lack of accommodations at Menard in two cases in this district that have recently been consolidated. *See Peters v. Butler et al.*, 16-cv-382-NJR-DGW; *Peters v. USA*, 17-cv-499-NJR-DGW. He includes more specific allegations regarding the lack of handicap accessibility at Menard in this case, however, including allegations regarding the denial of access to the stations required to effectively use the MP3 devices, which does not appear to be at issue in the consolidated cases. Count 1 will therefore be allowed to proceed, as Plaintiff has articulated a viable ADA and/or Rehabilitation Act claim at this stage, though the Court notes that there is some overlap with 16-cv-382-NJR-DGW and 17-cv-499-NJR-DGW.

Notably, Plaintiff's claims cannot proceed against the individual defendants because individual employees of IDOC cannot be sued under the ADA or Rehabilitation Act. *Jaros*, 684 F.3d at 670. The proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670 n.2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his or her official capacity)). Plaintiff has named IDOC and Director of IDOC, John Baldwin, as defendants. These are the only proper defendants for this claim, though they are essentially one in the same as Baldwin may defend against this claim in his official capacity only.

Count 1 will therefore proceed against IDOC and Baldwin in his official capacity only. It will be dismissed against all other defendants with prejudice.

## Count 2 – Deliberate Indifference (Assistive Devices)

Plaintiff claims that disabled inmates are denied handicap assistive devices that might help them walk or stand. He alleges the same thing in 16-cv-382, at Doc. 137, p. 6, in which he is represented by counsel. In this action, Plaintiff has not clearly indicated which defendants are to blame for this alleged denial. He notes that "this facility (Menard) refuses to allow [the use of assistive devices] through there [*sic*] policies, procedures, and customs," but Menard is not a named defendant in this action and will not be treated as such. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendants must be "specif[ied] in the caption").

Given that this claim is a duplicate of one already pending, and Plaintiff has not clearly indicated in his Second Amended Complaint which defendants are to blame for the alleged constitutional deprivations, Count 2 will be dismissed without prejudice. Plaintiff may choose to focus his efforts on litigating this claim in 16-cv-382, or move to amend his complaint in this action to more clearly associate specific defendants with it. The Court reminds Plaintiff that if he chooses the latter option, he cannot rely on the doctrine of *respondeat superior* because it is not applicable to § 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

## Count 3 – Medical Negligence

Plaintiff also claims that defendants were negligent toward him, based on them denying him proper ADA assistive devices, as detailed above. Where a

district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294, 1299 (7th Cir. 1995)). While this Court may have supplemental jurisdiction over these state-law claims pursuant to 28 U.S.C. § 1367, this is not the end of the matter.

First, Plaintiff failed to state a deliberate indifference claim based on the alleged conduct because he did not effectively associate any defendants with the claim. His medical negligence claim has the same issue. Further, under Illinois law, a Plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: 1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); 2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days

11

after the filing of the complaint); or 3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records). *See* 735 ILL. COMP. STAT. §5/2-622(a) (West 2017). A separate affidavit and report must be filed as to each defendant. *See* 735 ILL. COMP. STAT. §5/2-622(b).

Failure to file the required certificate is grounds for dismissal of the claim. *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). However, whether such dismissal should be with or without prejudice is up to the sound discretion of the court. *Sherrod*, 223 F.3d at 614. "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2-622 before her action is dismissed with prejudice.'" *Id.*; *see also Chapman v. Chandra*, Case No. 06-cv-651-MJR, 2007 WL 1655799, at *4-5 (S.D. Ill. June 5, 2007).

In the instant case, Plaintiff has failed to effectively associate any defendants with his medical negligence claim, and he has also failed file the necessary affidavits or reports. Therefore, Count 3 shall be dismissed without prejudice.

### Count 4 – Deliberate Indifference ("Lay-in-feed-in")

Plaintiff claims that Crain, Smith, Hawkins, and Walls were deliberately indifferent to his medical needs by subjecting him to "lay-in-feed-in," during which he developed sores from being confined to his bed 24 hours per day. He claims

they did this despite knowing that "the human body in motion is a healthy body." (Doc. 17-1, p. 11). He also claims that Crain and Smith reasoned that such confinement would help his condition, but the opposite was true. *Id.*

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state a claim, a prisoner must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The Seventh Circuit has held that a medical need is "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). The Court considers the injuries Plaintiff suffers from as sufficiently serious at this early stage. However, the analysis of this claim does not end there.

The Second Amended Complaint must satisfy the subjective component of these types of claims. To do so, it must suggest that the defendants showed deliberate indifference to Plaintiff's serious medical need. Deliberate indifference occurs when officials "know of and disregard an excessive risk to inmate health"

by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834).

Plaintiff has missed the mark with respect to the subjective component of his deliberate indifference claim. It is unclear from the allegations in the Second Amended Complaint whether and how Hawkins and Walls were involved in the decision to subject Plaintiff to "lay-in-feed-in" for three months. Plaintiff claims it was Crain and Smith who developed the idea, and that they convinced the doctor to order it. He also claims that they reasoned that such an order would help him, but that it did not help.

Mere disagreement with a physician's chosen course of an inmate's medical treatment does not amount to deliberate indifference. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not takes sides in disagreements about medical personnel's judgments or techniques); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

The allegations imply that Crain and Smith chose the alleged course of treatment believing it would help Plaintiff. Plaintiff disagrees, but mere

14

disagreement does not give rise to an Eighth Amendment claim. Further, without specific allegations tying Hawkins and Walls to the decision, the Court will not infer they were directly involved or deliberately indifferent. Plaintiff does not claim that any of these defendants were aware of the sores he developed from the chosen course of treatment either, much less were deliberately indifferent to them.

For these reasons, Count 4 will be dismissed without prejudice.

### Count 5 - HIPAA

"HIPAA does not furnish a private right of action." *Carpenter v. Phillips*, 419 F. App'x 658, 659 (7th Cir. 2011) (citing *Acara v. Banks*, 470 F.3d 569, 570-72 (5th Cir. 2006)); *see also Doe v. Bd. of Trs. of Univ. Ill.*, 429 F. Supp. 2d 930, 944 (N.D. Ill. 2006) ("HIPAA provides civil and criminal penalties for improper disclosures of medical information, but it does not create a private cause of action, leaving enforcement to the Department of Health and Human Services alone."). Count 5, based on HIPAA, will therefore be dismissed with prejudice.

### Defendants

Plaintiff either did not mention Lashbrook, Lawrence, Rowold, Meyer, and Bradley in the statement of claim of his Second Amended Complaint, or he did but failed to include specific allegations to show how they were each "personally responsible for the deprivation of a constitutional right," as is required to state a § 1983 against a defendant. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Plaintiffs are required to associate specific defendants with specific

claims, so that defendants are put on notice of the claims brought against them and can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). Furthermore, merely invoking the name of a defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). And, as mentioned herein, in the case of those defendants in supervisory positions, the doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville*, 266 F.3d at 740.

Further, throughout his Second Amended Complaint, Plaintiff refers to the "Defendants," claiming that "Defendants" violated his rights in various ways. Vague references to a group of "defendants," without specific allegations tying the individual defendants to the alleged unconstitutional conduct do not raise a genuine issue of material fact with respect to those defendants. *See Grieveson v. Anderson*, 538 F.3d 763, 777-78 (7th Cir. 2008). Plaintiff did not sufficiently associate Lashbrook, Lawrence, Rowold, Meyer, and Bradley with any viable claims for which they may be held accountable. Accordingly, they will be dismissed without prejudice.

## Injunctive Relief

In the request for relief in the Second Amended Complaint, in relevant part, Plaintiff seeks "a preliminary and permanent injunction ordering all defendants in this case . . . to take action to make this facility and all Illinois Department of Corrections ADA accessible" or to transfer Plaintiff to a suitable facility with ADA

upgrades that accommodate wheelchair-bound individuals. (Doc. 1, p. 11).

In order to obtain preliminary injunctive relief, Plaintiff must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists, and; (3) Plaintiff will suffer irreparable harm without the injunction. *Woods v. Buss,* 496 F.3d 620, 622 (7th Cir. 2007). If those three factors are shown, the district court must then balance the harm to each party and to the public interest from granting or denying the injunction. *Id.*; *Korte v. Sebelius,* 735 F.3d 654, 665 (7th Cir. 2013).

Plaintiff has not explained how he is at risk of suffering irreparable harm without preliminary relief. He has apparently been subjected to the alleged conditions for some time, as he has two pending cases, from 2016 and 2017, that are based on them at least in part. *See* 17-cv-499-NJR-DGW and 16-cv-382-NJR-DGW. Given this lack of urgency and clarity, and the fact that Plaintiff failed to file a separate motion pursuant to Federal Rule of Civil Procedure 65 seeking any sort of interim relief, Plaintiff's request for a preliminary injunction is **DENIED** without prejudice. Plaintiff may still request a preliminary injunction by filing a separate motion pursuant to Rule 65, should he so choose.

### Pending Motions

Plaintiff has filed several motions for recruitment of counsel (Docs. 8, 18, 19), which are **REFERRED** to a United States Magistrate Judge for a decision.

Plaintiff has also filed multiple motions for certification of class (Docs. 12, 20), which are hereby **DENIED** without prejudice. *See Oxendine v. Williams*, 509

F.2d 1405, 1407 (4th Cir. 1975) (holding it would be plain error to permit imprisoned *pro se* litigant to represent his fellow inmates in a class action). The Federal Rules permit class actions to be maintained only if the class representative (in this case the *pro se* Plaintiff Peters) "will fairly and adequately protect the interests of the class," FED. R. CIV. P. 23(a)(4), and "[e]very court that has considered the issue has held that a prisoner proceeding *pro se* is inadequate to represent the interests of his fellow inmates in a class action." *Lee v. Gardinez*, No. 11-cv-570-GPM, 2012 WL 143612, at *1 n.1 (S.D. Ill., Jan. 18, 2012) (quoting *Craig v. Cohn*, 80 F. Supp. 2d 944, 946 (N.D. Ind. 2000) (internal citations and quotation marks omitted)).

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against the **ILLINOIS DEPARTMENT OF CORRECTIONS** and **BALDWIN** (official capacity only). **COUNT 1** is **DISMISSED** with prejudice against all other defendants, as well as against Baldwin in his individual capacity.

**IT IS FURTHER ORDERED** that **COUNTS 2**, **3**, and **4** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 5** is **DISMISSED** with prejudice for the reasons stated above.

**IT IS FURTHER ORDERED** that **BALDWIN** (individual capacity only), **BRADLEY**, **LASHBROOK**, **LAWRENCE**, **HAWKINS**, **WALLS**, **MEYER**, **ROWOLD**, **CRAIN**, and **SMITH** are **DISMISSED** without prejudice for failure to

state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that as to **COUNT 1**, the Clerk of Court shall prepare for the **ILLINOIS DEPARTMENT OF CORRECTIONS** and **BALDWIN** (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Plaintiff. If one of the defendants fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Second Amended Complaint and shall not waive filing a reply pursuant to

42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Judge Herndon
2018.03.09 12:12:09
-06'00'

**United States District Judge**