IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SCOTT PETERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:17-CV-852-MAB |
| | ) |
| JOHN BALDWIN, et al., | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Plaintiff's Motion for New Trial (Doc. 212), along with a related Motion to Strike (Doc. 219). For the reasons set forth below, Plaintiff's Motion for New Trial is DENIED (Doc. 212) and Defendant's Motion to Strike is DENIED as MOOT (Doc. 219).

### PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Scott Peters is an inmate within the Illinois Department of Corrections ("IDOC"), who at all relevant times has been incarcerated at Menard Correctional Center (*see* Doc. 154, p. 1; Doc. 184, p. 1). Plaintiff filed this action in August 2017 alleging the IDOC violated the Americans with Disabilities Act ("ADA") and/or Rehabilitation Act ("RA") by failing to provide reasonable accommodations for inmates with mobility issues (*see* Docs. 1, 7, 67).[1] Thereafter, Plaintiff filed a motion for recruitment of counsel (Doc.

---

[1] Plaintiff initially filed this case as a class action brought on behalf of "ADA inmates." (Docs. 1, 7). However, Plaintiff subsequently decided to pursue this action individually as opposed to as a class action (*see* Doc. 154 at p. 2; *see also infra* pp. 8-9 at Discussion Section B(5)).

43), which was granted on July 2, 2018 (Doc. 50). Plaintiff's recruited counsel, Jonathan Garside, then filed an Amended Consolidated Complaint on May 10, 2019 (Doc. 82). After receiving briefing and holding a hearing on the issue of exhaustion, this matter was permitted to proceed on one claim that the IDOC violated the ADA/RA by not allowing Plaintiff to make use of walking assistive devices during the two-week period from March 22, 2016, to April 5, 2016 (*see* Docs. 114, 154, 184).

Defendants filed a motion for summary judgment, which the Court denied on March 3, 2023 (Doc. 154). Thereafter, both Plaintiff and Defendants filed Motions in Limine (Docs. 168, 169). Those motions were discussed at the Final Pretrial Conference that was held on November 16, 2023 (Docs. 183, 184). During that conference, the Court addressed the motions in limine and made several oral rulings that are relevant to Plaintiff's instant motion, including: (1) holding that Defendants could disclose that Plaintiff is a convicted felon, as agreed to by the parties; (2) allowing Plaintiff to appear unshackled and in street clothes; (3) denying without prejudice Plaintiff's motion to prevent arguments that he is not disabled; (4) limiting what Plaintiff could discuss regarding his allegations that he was injured while serving in the military; and (5) finding that punitive damages are unavailable, as conceded by Plaintiff (*see generally* Doc. 183). Just a few days later, by separate Order, the Court granted Defendants' motion to exclude evidence of Plaintiff's Veteran's Administration disability determination and denied Defendants' motion to exclude evidence of Plaintiff's handicapped placard (Doc. 185).

This matter proceeded to trial on December 5, 2023 (Doc. 196). The jury returned a verdict in favor of Defendant[2] just one day later (Doc. 202). Subsequently, Plaintiff's court-appointed counsel, Mr. Garside, was granted leave to withdraw from his representation of Plaintiff (Doc. 208). Finally, on December 27, 2023, Plaintiff filed the instant Motion for New Trial (Doc. 212). After being granted a brief extension of time, Defendant filed a response in opposition on January 24, 2024 (Doc. 214). Plaintiff then filed a reply in support on February 29, 2024 (Doc. 216). Defendant moved to strike Plaintiff's reply as both untimely and improper on March 14, 2023 (Doc. 219). Plaintiff has since filed a response to Defendant's motion to strike, which generally argues that his reply was timely (*see* Docs. 220, 221).

## DISCUSSION

Plaintiff's Motion for New Trial raises numerous evidentiary and legal challenges (Doc. 212). As far as the Court can discern, Plaintiff has challenged: (1) the Court's refusal to allow evidence of Plaintiff's VA disability determination; (2) the decision to allow Defendant to challenge whether Plaintiff was disabled; (3) the Court's evidentiary determination related to grievance(s) Plaintiff wrote; (4) whether Menard is ADA compliant in light of applicable statutes and caselaw; (5) the denial of class certification; (6) the effectiveness of his court-appointed counsel; (7) the decision to deny punitive damages; (8) the jury's composition; and (9) the jury's impartiality. The Court addresses each of these challenges in turn, along with Defendant's Motion to Strike (Doc. 219).

---

[2] To avoid unnecessary confusion at trial, the Court entered an Order prior to trial finding that injunctive relief was not an available remedy in this case and dismissing the Director of the IDOC as a Defendant (Doc. 195). Accordingly, this matter proceeded to trial with the IDOC as the only remaining Defendant.

A. *Applicable Legal Standard*

Rule 59(a)(1)(A) allows courts to grant a motion for new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Applying this rule, the Seventh Circuit has stated that "[a] new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Martinez v. City of Chicago*, 900 F.3d 838, 844 (7th Cir. 2018) (quoting *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014)). The determination as to whether to grant a new trial is committed to the trial court's discretion and will only be disturbed in exceptional circumstances showing a clear abuse of discretion. *Id.*

Under this standard, movants "bear a 'particularly heavy burden' because a court will set aside a verdict as contrary to the manifest weight of the evidence 'only if no rational jury could have rendered the verdict.'" *Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 444 (7th Cir. 2009) (quoting *Moore ex. rel. Estate of Grady, v. Tuleja,* 546 F.3d 423, 427 (7th Cir. 2008)). Moreover, evidence is viewed "in the light most favorable to the prevailing party, leaving issues of credibility and weight of evidence to the jury." *Id.* at 444-45.

B. *Analysis of Plaintiff's Motion for New Trial*

1) *The Court's Refusal to Allow Evidence of Plaintiff's VA Disability Determination*

Plaintiff first claims that the Court abused its discretion by refusing to allow him to introduce evidence of his Veteran Administration's disability determination (Doc. 212 at pp. 5-6). In response, Defendant argues Plaintiff failed to demonstrate that the Court

committed an error of law by excluding his VA disability determination (Doc. 214 at p. 4).

The Court previously addressed this exact challenge in its Order ruling upon the parties' motions in limine (Doc. 185). Specifically, that Order explained that "the VA's disability determination standards are entirely distinct from those under the ADA and Rehabilitation Act." (Doc. 185 at p. 3). That Order also cited several cases to support its ruling (*Id.*). *See, e.g.*, *Rowe v. Shulkin*, No. 17-CV-9258, 2019 WL 2060951, at *9 (N.D. Ill. May 9, 2019) (holding that "meeting the VA's standard for a special appointing authority cannot, by itself, establish disability under the Rehabilitation Act, as the eligibility requirements and purposes of the programs differ."); *Thorn v. BAE Sys. Hawaii Shipyards, Inc.*, 586 F. Supp. 2d 1213, 1222 (D. Haw. 2008) ("A VA disability rating—based on quantifying a decrease in a veteran's earning capacity—is a completely different inquiry and standard than that imposed by the ADA and HRS § 378–2 of whether a claimant's impairment substantially limits a major life activity."). Thus, due to the high risk of confusing the jury by introducing an entirely different disability standard, the Court decided to exclude evidence of Plaintiff's VA disability determination (Doc. 185 at pp. 4-5). Ultimately, the Court has already provided a detailed explanation as to why Plaintiff was not permitted to introduce evidence of his VA disability determination (*see* Doc. 185). Nothing in Plaintiff's current motion adequately addresses, let alone overcomes, the Court's prior Order. Consequently, this challenge lacks merit and does not warrant granting Plaintiff's motion.

*2) Allowing Defendant to Challenge Plaintiff's Disability*

Similarly, Plaintiff contends that the Court erred by allowing Defendant to challenge whether he was disabled, particularly in light of Plaintiff's VA disability determination and handicapped placard (Doc. 212 at pp. 3-6). In response, Defendant contends that demonstrating his status as a disabled individual is a required element of Plaintiff's ADA/RA claim that he needed to establish (Doc. 214 at pp. 3-4).

Undoubtedly, proving that Plaintiff was a qualified individual with a disability (as defined by the ADA/RA), is one of the required elements to state a claim under the ADA and RA. *See Scott v. Jeffreys*, No. 21-CV-03334, 2022 WL 2715802, at *2 (N.D. Ill. July 13, 2022) ("To state a claim under the ADA and the Rehabilitation Act, a plaintiff must allege that: (1) he is a qualified individual with a disability; (2) he was denied the benefits of the 'services, programs, or activities of a public entity'; (3) he was denied those benefits or otherwise discriminated against on account of his disability, and for the Rehabilitation Act claim, the additional requirement is that (4) the defendant is an entity which receives federal funds."). Plaintiff could not simply claim that this element was satisfied and move on because he believed it to be obvious. Instead, Plaintiff was required to provide sufficient evidence to demonstrate that he was disabled as defined under the ADA and RA (see Doc. 199 at p. 23). Yet, as previously discussed, the ADA and RA's definition of disability is not equivalent to a disability determination made by the VA or a state issued handicapped placard because those determinations rely upon different standards (*see generally* Doc. 185). *See Rowe v. Shulkin*, No. 17-CV-9258, 2019 WL 2060951, at *8 (N.D. Ill. May 9, 2019) ("The ADA defines 'disability' as: (1) a physical or mental impairment that

substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment.") (citing 42 U.S.C. § 12102(2)). Consequently, this argument is likewise without any merit and does not warrant a new trial or any other form of relief.

    *3) The Court's Refusal of Plaintiff's Grievance Records*

Plaintiff appears to argue that the Court abused its discretion by not allowing him to present his grievances as evidence (Doc. 212 at p. 6). Defendant counters that Plaintiff's grievances constitute inadmissible hearsay (Doc. 214 at p. 5).

Tellingly, Plaintiff's argument on this point is just one sentence long and lacks any explanation or analysis. As such, the Court will not conjecture as to which grievances Plaintiff may be referring to or why he believes they should have been admitted (or in that regard, whether he even attempted to admit them during the trial and was prevented from doing so). Generally, however, the Court rejects Plaintiff's argument because "grievances are inadmissible hearsay." *Smith v. Lashbrook*, No. 19-CV-637-RJD, 2022 WL 4314900, at *2 (S.D. Ill. Sept. 19, 2022); *Cunningham v. Jenkins*, No. 3:17-CV-126-RJD, 2021 WL 2686438, at *5 (S.D. Ill. June 30, 2021) ("[T]he Court generally finds that grievances are inadmissible hearsay; however, such records may be admissible if they are relevant and are not being offered for the truth of the matter asserted."). Additionally, if Plaintiff intended to argue that an exception applied, he should have identified and explained that exception at length. Yet, he did not do so.

For these reasons, the Court rejects Plaintiff's argument and finds this claim does not support his Motion for New Trial.

*4) ADA Compliance at Menard and Applicable Caselaw*

Plaintiff also claims that the judgment in his trial conflicts with those of other ADA/RA cases (Doc. 212 at p. 2). In support, Plaintiff cites to a case wherein a jury found another plaintiff's rights under the RA were violated based upon the IDOC's failure to provide the plaintiff with equal access to the shower area and other programs and facilities (*Id.*). *Ruffin v. Winnebago Cnty. Jail*, No. 03-CV-210-DRH, 2010 WL 3359478, at *3 (S.D. Ill. Aug. 25, 2010).

Pertinently, this matter proceeded to trial on just one claim that the IDOC violated the ADA/RA by not allowing Plaintiff to make use of walking assistive devices during the two-week period from March 22, 2016, to April 5, 2016 (*see* Docs. 114, 154, 184). And as Defendant emphasizes, Plaintiff's claim centered upon his access to assistive devices, not on the general ADA/RA compliance of Menard (Doc. 214 at p. 4). Therefore, the Court is not persuaded by Plaintiff's citation to a readily distinguishable case that involved a different time period, different legal challenge, different individuals, and different evidence. This argument is quite simply too far outside the scope of Plaintiff's case to warrant further consideration.

*5) The Denial of Class Certification*

Plaintiff also avers that he is entitled to a new trial because the Court erroneously denied his class certification (Doc. 212 at p. 6). Defendant responds that Plaintiff's challenge to this decision is both out of time and refuted by the record (Doc. 214 at p. 5).

The Court agrees with Defendant. While Plaintiff originally attempted to bring a class action (see Doc. 1), the record clearly demonstrates that Plaintiff did not file a motion

for class certification by the deadline provided in the Court's Order dated August 4, 2020 (*see* Docs. 117, 125). In fact, Plaintiff's counsel indicated on May 14, 2021, that Plaintiff would not be seeking class certification in this case (Doc. 128-1 at p. 2). Thus, in addition to having failed to timely raise this issue, Plaintiff also waived his attempt to pursue a class action. For these reasons, this argument by Plaintiff is wholly without merit.

*6) The Effectiveness of Plaintiff's Court-Appointed Counsel*

Plaintiff further contends that he is entitled to a new trial because he received ineffective assistance of counsel (Doc. 212 at p. 7). Defendant counters that Plaintiff does not have a constitutional right to effective assistance of counsel in a civil lawsuit, and that his counsel was effective (Doc. 214 at pp. 5-6).

Plaintiff's argument lacks merit. For one, Seventh Circuit precedent makes clear "that there is no Sixth Amendment right to effective assistance of counsel in a civil case." *Stanciel v. Gramley*, 267 F.3d 575, 581 (7th Cir. 2001) ("Although we do not challenge Stanciel's assertion that his attorney's performance was deficient … we cannot accept his argument that retrial is a proper remedy for defective representation in a civil action."); *see also Walker v. Stalter*, 991 F.2d 800 (7th Cir. 1993) (Rejecting the plaintiff's claim of ineffective assistance of his court-appointed counsel because "there is no right to counsel in civil cases."); *Teninty v. Geren*, No. 08 C 5287, 2011 WL 2457938, at *3 (N.D. Ill. June 17, 2011) ("Thus, to the extent that Teninty argues that her attorneys overlooked relevant evidence or did not adequately present her case, her motion also is denied because ineffective assistance of counsel is not a proper ground for a Rule 60(b) motion in a civil lawsuit.").

Additionally, the Court rejects Plaintiff's contention that his counsel failed to investigate or support his claims "in any way whatsoever." (Doc. 212 at p. 7). To the contrary, the Court notes that Plaintiff's appointed counsel worked diligently to represent Plaintiff for many years, taking on a burden much larger than that which is ordinarily asked of a Court-appointed counsel (*see* Doc. 50) (Order dated 7/2/2018 appointing Mr. Garside to represent Plaintiff). In fact, thanks to the hard work of Plaintiff's counsel, he positioned the case such that Defendant requested a settlement conference or mediation prior to trial (*see* Doc. 172). And the parties did, in fact, participate in a mediation, but the case ultimately did not resolve (Doc. 186).

Furthermore, the Court wishes to remind Plaintiff that when his appointed counsel sought to withdraw due to irreconcilable differences (Doc. 187), Plaintiff clearly expressed to both his appointed counsel and the Court that he wished for appointed counsel to continue to represent him (*see generally* Doc. 192). Finally, the Court also emphasizes that "[t]rial tactics are a matter of professional judgment" and "it is not our task to second-guess counsel's judgment and replace it with our own." *United States v. Lathrop*, 634 F.3d 931, 937 (7th Cir. 2011) (internal quotation marks and citations omitted).

Accordingly, Plaintiff's arguments regarding the effectiveness of his counsel are without any merit and are rejected.


*7) The Issue of Punitive Damages*

Plaintiff next argues that it was erroneous to not present the jury with the issue of punitive damages (Doc. 212 at pp. 7-8). In response, Defendant argues that this issue had already been agreed to amongst the parties (Doc. 214 at pp. 6-7).

The Court will not devote significant time to this claim as it lacks any merit. For one, Plaintiff, through counsel, conceded that he was not entitled to punitive damages in this action (*see* Doc. 183). Moreover, the Supreme Court of the United States has held that "[b]ecause punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act." *Barnes v. Gorman*, 536 U.S. 181, 189, 122 S. Ct. 2097, 2103, 153 L. Ed. 2d 230 (2002). *See also Scott v. Jeffreys*, No. 21-CV-03334, 2022 WL 2715802, at *5 (N.D. Ill. July 13, 2022) ("Jeffreys correctly asserts… that punitive damages are not available in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act."). Thus, this contention is meritless and does not provide any support for Plaintiff's motion.

*8) The Jury's Composition*

Plaintiff next argues that his motion for a new trial should be granted because the jury was not representative of the community (Doc. 212 at pp. 9-10). Defendant counters that Plaintiff did not raise this objection before or shortly after jury selection (Doc. 214).

The Court agrees with Defendant for several reasons. First and foremost, Plaintiff did not raise this objection before *voir dire* began or within seven days of discovering the claimed issue, as required by 28 U.S.C. § 1867(c). *See also Fleming v. Chicago Transit Auth.*,

397 F. App'x 249, 250 (7th Cir. 2010) (Rejecting a similar claim on appeal because the plaintiff, "who was represented by counsel in the district court, did not object at trial to the composition of the jury pool, so her appellate claim—whether Constitutional or statutory—is not properly before us."). In addition, Plaintiff's challenge to the jury venire is both contradictory and lacking any actual data. For instance, Plaintiff stated "[t]hat although the normal ratio of Blacks, Mexicans/Hispanics may be low in the area, there are multiple IDOC facilities … containing some 5,000 prisoners of which the majority is Black or Hispanic origin." (Doc. 212 at p. 10). Thus, by Plaintiff's own admission, the individuals he claims were not adequately represented in the jury venire comprise a "low" percentage of the population in the area. Plaintiff has not cited any support for, and the Court will not seriously entertain, his argument that a jury pool's composition must be representative of the prison population in a certain area.

For these reasons, the Court rejects Plaintiff's challenge to the jury venire's composition.

9) *Bias and the Court's Jury Instructions*

Plaintiff's final argument is that he should be granted a new trial because the jury was biased against him (Doc. 212 at p. 11-13). As part of this argument, Plaintiff claims that it was improper for the jury instructions to mention that he was incarcerated at Menard and had been convicted of a crime (*Id.*). Defendant responds that Plaintiff's claim does not warrant a new trial because Plaintiff, through counsel, agreed to the instructions he now complains of (Doc. 214 at pp. 7-8).

Having thoroughly reviewed the record, the Court finds that Plaintiff agreed to the instructions he now complains of (*see* Docs. 199, 200). "Rule 51(c) requires that a party object to a jury instruction in a timely manner, on the record, 'stating distinctly the matter objected to and the grounds for the objection.'" *Walker v. Groot*, 867 F.3d 799, 803 (7th Cir. 2017). Thus, at most, the jury instructions Plaintiff challenges could be subjected to plain error review. *See Id.* ("Especially in civil cases, plain-error review of jury instructions is 'quite limited' and 'discretionary[.]'"). Here, nothing in the instructions Plaintiff now complains of comes remotely close to clearing the high bar of plain error review of unchallenged jury instructions. *Id.* at 803-04. In addition, one of the instructions Plaintiff now complains of which mentioned that he was convicted of a crime was based upon the Seventh Circuit's Pattern Jury Instructions and is a proper restatement of the law (*see* Doc. 199 at p. 12). *See also Lewis*, 590 F.3d at 435 (Finding an instruction that followed a Seventh Circuit Pattern Instruction to be a "proper statement of law.").

Likewise, even if the instructions had been timely objected to and were erroneous in some regard, Plaintiff still must demonstrate that the complained of instructions could produce prejudice by confusing or misleading the jury. *See Guzman v. City of Chicago*, 689 F.3d 740, 745 (7th Cir. 2012). Here, there can be no prejudice to Plaintiff from instructions that merely mentioned his conviction or where he was incarcerated, when the entire nature of Plaintiff's claim centered upon allegations related to his treatment while incarcerated at Menard. Quite simply, the Court is baffled as to how the jury could have adequately been instructed as to the nature of Plaintiff's lawsuit if it was not informed

that he was an inmate at Menard, given that Menard is where the events took place.[3] Additionally, the complained of instructions actually limited the purposes for which the jury could consider Plaintiff's conviction and incarceration, thereby further limiting any potential prejudice to Plaintiff (*see, e.g.*, Doc. 199 at p. 12).

For these reasons, the Court rejects Plaintiff's claim that the jury was unfairly biased against him. Accordingly, having analyzed and rejected all of Plaintiff's challenges, Plaintiff's Motion for New Trial is DENIED (Doc. 212).

C. *Defendant's Motion to Strike (Doc. 219)*

Finally, Defendant has moved to strike Plaintiff's reply in support of his Motion for New Trial (Doc. 219; *see also* Doc. 216). Specifically, Defendant argues that Plaintiff's reply brief should be stricken because it is untimely and contains baseless allegations and improper arguments (Doc. 219 at pp. 2-3). In response, Plaintiff contends that his reply brief was timely and Defendant's response was actually untimely (Docs. 220, 221).

The Court need not further consider this issue. In light of the Court's denial of Plaintiff's Motion for New Trial, this motion is DENIED as MOOT (Doc. 219).

## CONCLUSION

For the reasons outlined above, Plaintiff's Motion for New Trial is DENIED (Doc. 212); and Defendant's Motion to Strike is DENIED as MOOT (Doc. 219).

---

[3] The Court also notes that Plaintiff previously argued in his Motion for New Trial that other cases had found ADA/RA violations at Menard (*see* Doc. 212 at p. 2). It is unclear to the Court how Plaintiff can reconcile his desire to not mention that he was incarcerated at Menard with his desire to argue that Menard is generally not ADA compliant.

**IT IS SO ORDERED.**

**DATED:  July 31, 2024**

                                                     <u>s/ Mark A. Beatty</u>
                                                    **MARK A. BEATTY**
                                                    **United States Magistrate Judge**